IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WAUSAU SUPPLY COMPANY,

                Plaintiffs,                OPINION AND ORDER

   v.

                                      13-cv-698-wmc

KELLIE MURPHY, EDMUND MANYDEEDS, III,
RYBERG LAW FIRM S.C., NEIL CZARNECKI, and
K.C.,

                Defendants,

and

KELLIE MURPHY, NEIL CZARNECKI, A.B.,
C.D., and EDMUND MANYDEEDS, III,

                Plaintiffs,

   v.                                       13-cv-759-wmc

ERIE INSURANCE EXCHANGE, TAMARA J.
MILLIS, MICHAEL D. MILLIS, STATE
DEPARTMENT OF HEALTH SERVICES,
and WAUSAU SUPPLY COMPANY,

                Defendants.

---

     As indicated in the caption, this opinion concerns two consolidated actions.  In the first action (No. 13-cv-698), plaintiff Wausau Supply Company seeks equitable relief as a plan fiduciary in the form of an order enforcing the terms of a plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3). In the second action (No. 13-cv-759), Wausau Supply removed a claim by plaintiffs Kellie Murphy, Neil Czarnecki, A.B., C.D. and Edmund Manydeeds, III (some of whom are defendants in the first action) to extinguish or otherwise dispose of Wausau Supply's lien.  Before the court is plaintiff Wausau Supply's motion for summary judgment.  ('698

dkt. #45; '759 dkt. #32.) For the reasons that follow, the court will grant the motion, finding that Wausau Supply is entitled to reimbursement in the amount of $525,497.34.

## UNDISPUTED FACTS[1]

### A. The Parties

Neil Czarnecki and Kelly Murphy are the parents of K.C. (For ease of reference, the court will refer to Czarnecki, Murphy and K.C. collectively as the "Czarneckis.") In January 2010, K.C. suffered serious personal injuries while at a child care center owned and operated by Tamara Millis and/or her spouse Michael Millis.[2] The Ryberg Law Firm, S.C. represented the Czarneckis in the personal injury action, and Edmund Manydeeds III served as guardian ad litem for K.C. in that action.

Wausau Supply Company is a Wisconsin corporation with its principal place of business in Wisconsin. For all times relevant to this action, the Czarneckis were covered participants and beneficiaries in the Wausau Supply Company Employee Health and Welfare Benefit Plan ("the Plan"). The Plan is a self-funded "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(a), and an "employee benefit plan" within

---

[1] For the purposes of summary judgment, the court finds the following facts, taken from the parties' submissions of proposed findings of fact, to be material and undisputed unless otherwise noted.

[2] In a July 2013 report, prepared three years after the injury, K.C.'s treating physician represents that he has "significant cognitive and behavioral problems associated with his brain injury," and "it is unlikely that he will have significant improvement in his neurologic function." (Defs.' PFOFs ('698 dkt. #68) ¶ 12.) The Czarneckis' expert estimates that K.C.'s future medical needs and impairment of earning capacity carry a present value of $2.6 million, and that the range of costs for services is between $4.6 and $6.9 million. (*Id.* at ¶ 13.)

the meaning of 29 U.S.C. § 1002(3). Wausau Supply is an "employer" engaged in commerce or an activity affecting commerce within 29 U.S.C. § 1002(5), an "administrator" of the Plan within the meaning of 29 U.S.C. § 1002(16)(A), a "plan sponsor" within the meaning of 29 U.S.C. § 1002(16)(B), and a fiduciary of the Plan. In those capacities, Wausau Supply is a party in this action.

**B. The Plan**

In January 2010, Wausau Supply established and maintained the Plan for the purpose of providing certain healthcare benefits to its employees and their families.[3] The Plan is funded by contributions from Wausau Supply Company and its employees. The amount of these regular contributions are designed to cover qualified participants' benefit payments and related administrative expenses, including the cost of third-party claim administration and stop-loss coverage provided by WPS.[4]

As do many other health care providers, the Plan asserts a subrogation or reimbursement interest in cases where the medical claims involve injuries caused by another person:

---

[3] The Plan is neither a governmental, church or unfunded excess benefit plan. Nor is the Plan maintained solely for complying with applicable workers' compensation, unemployment, or disability insurance laws. The Plan also is not maintained outside of the United States.

[4] Wausau Supply proposes a number of facts about the role of subrogation recoveries, both for it specifically and more generally with respect to containing healthcare costs (Pl.'s PFOFs ('698 dkt. #47) ¶¶ 26-37), which arguably provide context for its claim here, but have no apparent relevance to the legal issues in this action and are not repeated.

**2.8 Subrogation**

**1. Right to First Reimbursement and Recovery.**

When the Plan advances benefits to, or on behalf of, any participant because of a disability or loss which may have been caused by another person, corporation, or other entity . . . . , the Plan shall have the following rights available to the Plan under applicable law:

a. A right to first reimbursement from, and an automatic lien upon, any judgment, settlement or other amount payable to, or on behalf of, the participant . . . on account of the disability or loss, regardless of the source of the funds or the sufficiency or the allocation of the amount payable and with first priority over any other payouts demanded or claims asserted by any other party. . . .

(Declaration of Ryan L. Woody ("Woody Decl."), Ex. 2 ('698 dkt. #52-1) pp.6-7.)[5]

From 2010 to 2012, the Plan designated WPS Administrative Services, a division of Wisconsin Physicians Service Insurance Corporation ("WPS"), as its "Claim Administrator." As provided by the Plan, WPS was authorized in that role to pursue and manage efforts of subrogation, reimbursement and recovery on behalf of Wausau Supply. (*Id.* at pp.7-8.) In 2012, Wausau Supply cancelled its administrative services agreement with WPS, and switched to Blue Cross Blue Shield of Wisconsin, Inc. As a result of the cancellation, all prior assignments of subrogation claims made by Wausau Supply to WPS automatically reverted back to Wausau Supply under the terms of the services agreement. The 2013 Plan document removed the assignment language, and instead allows the Plan through Wausau Supply to take whatever legal action it sees fit against

---

[5] This language is from the 2010 Plan but there appears to be no material distinction between the language in the 2010 Plan and that in the 2011 and 2012 Plan documents.

any party or entity to recover the benefits paid under the Plan.  (Pl.'s PFOFs ('698 dkt. #47) ¶ 41.)

### C. Plan's Payments of K.C.'s Claims

Neil Czarnecki on behalf of K.C. submitted claims to the Plan relating to the injuries he sustained as a result of the January 2010 incident.  The Plan paid medical expenses in the amount of $525,497.34.  K.C. and his parents on his behalf also submitted claims to the Wisconsin Department of Health Services by way of BadgerCare Plus/Medicaid relating to K.C.'s injuries.  DHS paid expenses in the amount of $15,033.19.

### D. Stop Loss Insurance Coverage

The Plan secured excess loss insurance, commonly referred to as "stop-loss coverage," from American National Insurance Company ("ANIC") to protect the self-funded Plan from catastrophic losses.  The ANIC policy contains a "simultaneous reimbursement" provision that describes an expedited claims review and reimbursement procedure, where ANIC will "forward the specific claim reimbursement to the TPA [here, WPS or Blue Cross, depending on the timing] and the TPA will simultaneously release payment to the providers of service."  (Defs.' PFOFs ('698 dkt. #68) ¶ 16.)  Regardless of the import of this provision, Wausau Supply represents simultaneous reimbursement never occurred for K.C.'s claims.  (Pl.'s Resp. to Defs.' PFOFs ('698 dkt. #72) ¶ 16.)

Pursuant to the 2010 stop-loss insurance coverage, the Plan was required to pay out the first $75,000.00 in benefits incurred per covered person, per calendar year before any reimbursement obligation was triggered.[6] From January 1, 2010, through December 31, 2010, the Plan paid $455,399.37 in benefits on behalf of K.C., for which the Plan sought and received reimbursement from ANIC in the amount of $372,244.58. In 2011, ANIC specifically "lasered" K.C. under the Plan, requiring the Plan to pay out $250,000.00 on behalf of K.C. before triggering any stop-loss reimbursement by ANIC. In 2012, this amount reverted to $75,000.00.

### E. State Court Action

The Czarneckis filed a personal injury action in the Circuit Court of Jackson County, Wisconsin against Tamara and Michel Millis and their insurer Erie Insurance Exchange. In addition to other damages, the Czarneckis sought to recover past medical expenses. The Millises had two insurance policies with policy limits of at least $1,500,000.

The Czarneckis and the Millises agreed to a private mediation session scheduled for September 30, 2013. Despite being a party in the state court action, plaintiffs did not inform WPS's counsel of the scheduled mediation. Instead, WPS's counsel was informed of the mediation on September 16, 2013, by the Millises' counsel, asking if he would be available by phone. WPS's counsel sent a letter to all parties, advising them

---

[6] Consistent with its position, the Czarneckis refer to the amount required to be paid by the Plan before the stop-loss reimbursement kicks in as a "deductible," apparently to draw a parallel with a traditional insurance framework.

6

that he and his client's representative would be available telephonically during the mediation. Prior to the mediation, the Czarneckis, their counsel, and K.C.'s guardian ad litem were all on notice of Wausau Supply's subrogation claim in the amount of $525,794.34. At the September 30, 2013, mediation, the Millises and their insurance company reached a settlement with the Czarneckis for $1,250,000. (The Czarneckis do not dispute this fact, though contend that it was subject to court approval, including consideration of subrogation claims.) Erie Insurance Exchange is in possession of these settlement funds and awaiting instructions on how to disburse them.

      Sometime during that afternoon, counsel for the Czarneckis called WPS's counsel to inform him of the settlement and, according to Wausau Supply, to inform him that the Czarneckis were refusing to reimburse WPS or Wausau Supply in the amount of its subrogation claim. The Czarneckis dispute both the timing and substance of this call. Instead, they contend that their counsel updated WPS's counsel *during* the course of the mediation. Moreover, when he spoke with him in the afternoon, "[t]here was no statement made that there was refusal by plaintiffs to reimburse WPS or Wausau Supply." (Defs.' Resp. to Pl.'s PFOFs ('698 dkt. #66) ¶ 69.)[7] Any dispute as to what was or was not said during the September 30, 2013, call between the Czarneckis' counsel

---

[7] For support, the Czarneckis turn to an affidavit by their counsel, Attorney J. Drew Ryberg, "asserting that Czarnecki defendants have refused to honor the claim of Wausau Supply/WPS is a serious overstatement and wholly inaccurate." (Affidavit of J. Drew Ryberg ("Ryberg Aff.") ('698 dkt. #69) ¶ 7.) Certainly, it is difficult, if not impossible, to reconcile this statement with the Czarneckis' treatment of Wausau Supply's subrogation rights in state court, and continued here. (*See* Not. of Removal, Ex. B ('759 dkt. #1-2) 3-20 (arguing that Wausau Supply's right to reimbursement is barred by the "make whole doctrine" and the prohibition of unconstitutional takings under the Fifth Amendment, among other arguments).)

and WPS's counsel is not material, especially in light of their continued objection to Wausau Supply's equitable lien.

The Czarneckis also did not first obtain written consent from the Plan, WPS, or Wausau Supply to settle the case as required by Section 2.8 of the Plan. The Czarneckis do not dispute the lack of written consent, but implicitly contend that consent is not (yet) required since the settlement is not final until it is approved by a court. On September 30, 2013, WPS's counsel sent a letter to the Czarneckis' counsel reminding him of his clients' reimbursement obligation under the Plan.

On October 3, 2013, the Czarneckis filed a Notice of Motion and Affidavit to "extinguish the subrogation/reimbursement/first recovery claim." (Not. of Removal, Ex. A ('759 dkt. #1-1) 2.) The Czarneckis do not dispute this, but point out that they filed an amended motion on October 21, 2013, which removed the "extinguish" language. As the court explained in its prior order, however, with or without the word "extinguish," the amended motion still sought to dispose of WPS's lien -- the same arguments made here in opposition to Wausau Supply's motion for summary judgment. (6/6/14 Op. & Order ('698 dkt. #60) 3, 7.))

Moreover, in the amended motion, the Czarneckis proposed allocating $1,150,000 into a special needs trust for the benefit of K.C. and the remaining $100,000 to K.C.'s parents. According to the petition, the $100,000 allotment covered the plaintiffs' claims for "provision of services, including medical expense, society and companionship." (Not. of Removal, Ex. B ('759 dkt. #1-2) 4.) Wausau Supply contends that there is no factual basis for this proposed split, which the Czarneckis

8

purport to dispute, but simply state that it "is up to the court to make that allocation." (Defs.' Resp. to Pl.'s PFOFs ('698 dkt. #66) ¶ 85.) The Plan terms provide for first priority on "*any* judgment, settlement or other amount payable to, or on behalf of, the participant . . . on account of the disability or loss, *regardless* of the source of the funds or the sufficiency or the allocation of the amount payable . . . ." (Woody Decl., Ex. 2 ('698 dkt. #52-1) p.7.)

OPINION

The undisputed facts demonstrate that: (1) Wausau Supply has expended $525,497.34 in claims relating to K.C.'s injuries allegedly caused by the Millises; and (2) the Plan grants Wausau Supply with a right of reimbursement and an equitable lien on proceeds from any settlement concerning K.C.'s injuries. As far as the court can discern from defendants' poorly-constructed opposition, the Czarneckis nevertheless assert two objections to Wausau Supply's assertion of an equitable lien on the settlement proceeds. First, the Czarneckis argue that the "make whole" doctrine applies, precluding any payment to Wausau Supply because the Czarneckis were not made whole by the settlement. As part of that argument, the Czarneckis maintain that the ANIC stop loss insurance strips the Plan of its otherwise self-funded status, thereby moving it outside of the zone of ERISA preemption. Second, the Czarneckis contend that because any settlement proposal of the interest of a minor requires court approval under Wisconsin law, it is a state court matter, which falls outside of the realm of ERISA preemption. The court finds neither argument persuasive.

I. Application of the Make Whole Doctrine

"In Wisconsin, the general rule is that an insurer has no right to subrogation 'unless the insured [is] made whole . . . .'" *Ramsey Cnty. Med. Ctr., Inc. v. Breault*, 189 Wis. 2d 269, 273, 525 N.W.2d 321, 323 (Ct. App. 1994) (citing *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 271-72, 316 N.W.2d 348, 353 (1982)). The make whole doctrine, however, only applies "if it is not preempted by ERISA." *Ramsey Cnty. Med. Ctr.*, 198 Wis. 2d at 274, 525 N.W.2d at 323. "If ERISA preempts state law, the subrogation issue is determined by federal law, which does not restrict the subrogation rights of the health carrier until the injured party is made whole." *Id.*

Not only did the Wisconsin Court of Appeals in *Ramsey* describe the doctrine's application in this framework 20 years ago, the United States Supreme Court recently embraced it as well in considering the application of equitable defenses -- like the make whole doctrine -- in determining a plan administrator's right to enforce contractual requirements under ERISA. In *U.S. Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013), the Court took up a Circuit split concerning the application of equitable defenses in ERISA cases, and sided with the majority of circuit courts, including the Seventh Circuit, to hold that equitable defenses cannot override plan terms. *Id.* at 1544-45; *see also Admin. Comm. of Wal-Mart Stores, Inc. v. Varco*, 338 F.3d 680, 692 (7th Cir. 2003). In *McCutchen*, the plaintiff, similar to the Czarneckis here, "maintained that U.S. Airways could not receive the relief it sought because he had recovered only a small portion of his total damages; absent over-recovery on his part, U.S. Airways' right to reimbursement did not kick in." 133 S. Ct. at 1543-44. The Supreme Court rejected any application of the

make whole doctrine, holding that equitable defenses cannot override a plan subject to ERISA. *Id.* at 1546. In so holding, the Court explained that "enforcing the lien means holding parties to their mutual promises. Conversely, it means declining to apply rules--even if they would be 'equitable' in a contract's absence--at odds with the parties' expressed commitments." *Id.*[8]

The Czarneckis persist, however, arguing that the Plan does not fall within ERISA because the ANIC insurance strips it of its "uninsured" status. *See FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990) (explaining that "employee benefit plans that are insured are subject to indirect state insurance regulation"). In *Ramsey County Medical Center*, 189 Wis. 2d at 277-78, 525 N.W.2d at 325, the Wisconsin Court of Appeals considered the effect on the uninsured statute of an employee benefit plan of a "stop-loss policy that covered the Hartzell Plan in the event the Plan was required to pay a certain amount in a given year." After reviewing extensive case law from other jurisdictions, the court concluded that "stop-loss insurance does not affect the uninsured status of an employee benefit plan," explaining:

---

[8] In *Ruckel v. Gassner*, 2002 WI 67, ¶ 43, 253 Wis. 2d 280, 646 N.W.2d 11, the Wisconsin Supreme Court held that a self-funded group health insurance plan could not assert its subrogation rights unless and until the insured is made whole, regardless of any contractual language to the contrary. In *Ruckel*, however, the case did not concern an employee funded plan, subject to ERISA. Indeed, the court in *Ruckel* acknowledged that "[i]n some instances, legislatively-sanctioned subrogation may override the made whole principles discussed in this case," citing "self-funded employee pension and benefit plans under The Federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461" as an example. *Ruckel*, 2002 WI 67, at ¶ 42 n.7 (citing *FMC Corp. v. Holliday*, 498 U.S. 52, 58-65 (1990); *Petro v. D.W.G. Corp.*, 148 Wis. 2d 725, 727-28, 436 N.W.2d 875 (Ct. App. 1989)).

> The stop-loss policy is not health insurance, and it does not pay benefits directly to participants. Rather, the policy is designed to protect Hartzell Manufacturing from catastrophic losses. Further, the policy does not cover participants of the Plan, but instead covers the Plan itself. As a result, the Plan, and not the insurance company, is solely liable to the participants for the payment of benefits.

189 Wis. 2d at 276, 525 N.W.2d at 324.

While the Seventh Circuit has not considered this issue, as far as the court can discern, all circuit courts considering it have held that stop-loss insurance does not strip a self-funded, employee benefit plan of its uninsured status. *See Bill Gray Enters., Inc. Emp. Health & Welfare Plan v. Gourley*, 248 F.3d 206, 209 (3rd Cir. 2001) ("We join our sister circuits in holding a self-funded employee benefit plan with stop-loss insurance is not deemed an insurance provider under the Employee Retirement Income Security Act."), *abrogation recognized on other ground*, *U.S. Airways, Inc. v. McCutchen*, 663 F.3d 671 (3rd Cir. 2011), *rev'd*, 133 S. Ct. 1537 (2013); *see also Thompson v. Talquin Bldg. Prods. Co.*, 928 F.2d 649, 653 (4th Cir. 1991) (holding that "stop-loss insurance does not convert Talquin's self-funded employee benefit plan into an insured plan"); *Brown v. Granatelli*, 897 F.2d 1351, 1354 (5th Cir. 1990) (holding that "under Texas law stop-loss insurance is not accident and sickness insurance"); *United Food & Commercial Workers & Emp'rs Ariz. Health & Welfare Trust v. Pacyga*, 801 F.2d 1157, 1161-62 (9th Cir. 1986) ("The stop-loss insurance does not pay benefits directly to participants, nor does the insurance company take over administration of the Plan at the point when the aggregate amount is reached. Thus, no insurance is provided to the participants, and the Plan should properly be

termed a non-insured plan, protected by the redeemer clause and preemptive of the Arizona antisubrogation law.").

The Czarneckis attempt to distinguish *Ramsey* and this line of cases based on the "simultaneous reimbursement" provision of the ANIC policy. There are at least two problems with this argument. *First*, under the plain language of the simultaneous reimbursement provision of the ANIC policy, the payment from ANIC still goes through Wausau Supply (or the Plan administrator) for reimbursement to medical providers, and does not go directly to participants of the Plan or to their medical providers.[9] (Defs.' PFOFs ('698 dkt. #68) ¶ 16) (describing that ANIC will forward claim reimbursement to Wausau Supply and authorize Wausau Supply to issue immediate payment to medical providers).) *Second*, the undisputed evidence demonstrates that this provision was not used in processing K.C.'s medical claims. Thus, even crediting the Czarneckis' argument, the Plan maintained its uninsured status at least with respect to the claims at issue here.

## II. Role of Minor Settlement Approval Requirement

Next, the Czarneckis argue that this case concerns a settlement by a minor, which is a state court matter, not preempted by ERISA. (Defs.' Opp'n ('698 dkt. #67) 15 (citing *Bauhaus USA, Inc. v. Copeland*, 2001 WL 1524373 (N.D. Miss. 2001)). For the

---

[9] The Czarneckis state that "Wausau Supply likely is not going to reimburse American National [$371,338.89] if successful here." (Defs.' Opp'n ('698 dkt. #67) 12.) Even assuming this allegation were relevant, the Czarneckis provide no support for such a claim, and in its reply brief, Wausau Supply points out that it is contractually obligated under the terms of the reinsurance treaty to reimburse ANIC first from any recovery. (Pl.'s Reply ('698 dkt. #76) 5.)

reasons provided in the court's prior order denying the Czarneckis' motion to remand and motion to dismiss, this case is properly before this court. (6/6/14 Op. & Order ('698 dkt. #60).) Indeed, the court has exclusive jurisdiction over the '698 action, seeking reimbursement under ERISA. (*Id.* at p.11.)

More importantly, the Czarneckis fail to explain why or how Wisconsin's requirement of court approval of a settlement involving a minor's claim, Wis. Stat. § 807.10, impacts Wausau Supply's right to reimbursement under ERISA and the terms of the Plan. The fact that a minor settlement has to be approved by a court -- a procedural requirement -- does not upend Wausau Supply's right to assert its subrogation interests, or at least the Czarneckis have failed to develop any argument or point to any case law supporting their contention that Wis. Stat. § 807.10 prohibits a Plan from exercising its rights under ERISA. Similarly, the fact that the guardian ad litem proposed allocating the vast majority of the settlement funds to K.C., rather than to his parents, also does not implicate Wausau Supply's rights to reimbursement in light of the broad language of Section 2.8 of the Plan.

Indeed, there is nothing about Wis. Stat. § 807.10 that precludes a *federal* court from approving the settlement. To the contrary, if a guardian ad litem has been appointed -- which is the case here -- then the approval can be by "any court of record," not limited to the court that appointed the guardian ad litem. Wis. Stat. § 807.10(2); *see also Doll v. New Holstein School Dist.*, No. 03-C-603, 2007 WL 2344979, at *1 (E.D. Wis. Aug. 15, 2007) (federal court approving minor settlement under Wis. Stat. § 807.10).

For these reasons, the court also rejects any objection to Wausau Supply's assertion of its equitable lien based on this case involving a minor settlement.

### III. Next Steps

Approval under Wis. Stat. § 807.10 requires a finding that the settlement is "fair and reasonable and in the best interests of" K.C. *In re Glaser*, No. 05CV1319, 2005 WL 2491542, at *1 (Wis. Cir. Ct. Dane Cnty. Apr. 25, 2005). K.C.'s guardian ad litem, Edmund Manydeeds, III, previously submitted a petition for approval of minor settlement to the Circuit Court, requesting $1.15 million be allocated to K.C. and held in a special or supplemental needs trust, and that $100,000 be allocated to his parents. (Woody Decl., Ex. 2 ('698 dkt. #62-2).) In light of the court's decision granting Wausau Supply's request for equitable relief under 29 U.S.C. § 1132(a)(3) and awarding it $525,797.34 as reimbursement for paid medical expenses, the court requests that Manydeeds submit an amended petition for approval of minor settlement. In addition to that petition, Wausau Supply should submit its petition for attorneys' fees and costs pursuant to ERISA § 502(g)(1), and the Czarneckis' counsel -- to the extent that he has a good faith basis for such a request -- should similarly submit his petition for attorney's fees and costs.

ORDER

IT IS ORDERED that:

1) '698 plaintiff and '759 defendant Wausau Supply Company's motion for summary judgment ('698 dkt. #45; '759 dkt. #32) is GRANTED;

15

2) on or before October 14, 2014, Edmund Manydeeds, III shall submit an amended petition for approval of a minor settlement pursuant to Wis. Stat. § 807.10;

3) petitions for attorney's fees and costs are due on or before October 14, 2014, with any oppositions due October 21, 2014;

4) all remaining pretrial deadlines and the trial set for October 20, 2014, are STRUCK; and

5) the court will set a hearing to approve the settlement only if it appears necessary after review of the parties' written submissions.

Entered this 22nd day of September, 2014.

                        BY THE COURT:

                        /s/

                        _____
                        WILLIAM M. CONLEY
                        District Judge